PIEDAD ALVARADO De KRAUSE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
De Krause v. Commissioner
Docket No. 6144-72
United States Tax Court
T.C. Memo 1974-291; 1974 Tax Ct. Memo LEXIS 28; 33 T.C.M. (CCH) 1362; T.C.M. (RIA) 740291; November 18, 1974, Filed. *28 Petitioner, a nonresident alien individual and beneficiary of a United States trust, claimed she was engaged in a trade or business within the United States by virtue of sec. 875(2), and thereby entitled to claim personal exemptions and use the graduated income tax rates provided in sec. 1. Held, the trust, of which petitioner is a beneficiary, is only engaged in collecting and distributing investment income, which is not a trade or business. Higgins v. Commissioner, 312 U.S. 212 (1941). Petitioner may not, therefore, claim personal exemptions, and is subject to taxation at the flat 30 percent rate provided in sec. 871(a) (1). Thomas E. Toney, III, for the petitioner. John B. Turner, for the respondent. WILBUR MEMORANDUM OPINION WILBUR, Judge: Respondent determined a deficiency of $937.50 in petitioner's Federal income tax for the taxable year ended December 31, 1970. In addition to contesting the deficiency, petitioner claims an overpayment of $1,232.72. The issue is whether or not petitioner, a nonresident alien, was engaged in a trade or business in the United States in 1970, and thus entitled to use the graduated rate schedule in computing her tax (rather than the flat *29 30 percent rate otherwise applicable) and entitled to claim a deduction for personal exemptions for herself and her four children. All of the facts have been stipulated and are found accordingly. Petitioner is a widow. During the period involved herein and at the time her petition was filed, petitioner was a nonresident alien individual residing in Guadalajara, Jalisco, Mexico. Petitioner was married to Ernest J. Krause, Jr., who died April 22, 1970. There were four children of the marriage, and petitioner provided for their support from April 22, 1970, throughout the rest of the year. All of the income reported by petitioner in 1970 was received by her as a beneficiary of the Louise R. Krause Trust (hereinafter "the trust"), created by Louise R. Krause on August 4, 1949. In 1970, the entire corpus of the trust consisted of 17,568 1/3 shares of the common stock and 3,917 shares of the preferred stock of Columbia Quarry, Inc., (hereinafter "Quarry"), a Missouri corporation whose principal business consisted of operating a quarry in Columbia, Illinois. Quarry had approximately 10,000 shares of preferred stock and 50,000 shares of common stock outstanding in 1970. Both classes *30 of stock were voting stock. The trust's two trustees were officers and directors of Quarry during 1970, and were not paid for their services as trustees during that year. The terms of the trust instrument confer unlimited discretionary authority on the trustees to manage the trust assets as though they were the individual owners of those assets. The trustees did not sell, purchase, or distribute any of the corpus of the trust during 1970. They did, however, collect $76,038 in dividends paid on the Quarry stock held by the trust, which was the only source of income to the trust in 1970. All of that income, less $50 professional service expense, was distributed to the beneficiaries of the trust in accordance with the terms of the trust instrument. All the distributions made by the trust to petitioner during 1970 were distributions of Quarry's current dividends. Petitioner filed a nonresident alien income tax return for 1970 with the Director of International Operations of the Internal Revenue Service in Washington, D.C., on which she reported her distributions from the trust and claimed deductions for personal exemptions for herself and her four children. Respondent mailed a timely *31 notice of deficiency to petitioner disallowing her deductions for personal exemptions. A timely petition was filed with this Court, contesting the asserted deficiency of $937.50 and claiming an overpayment of $1,232.72. Section 871(a) [1] imposes a tax of 30 percent on the dividend income received by a nonresident alien from United States sources, unless the income is effectively connected with the conduct of a trade or business and thereby subject to the regular individual income tax rates under section 871(b). [2] *32 Section 873 [3] *33 provides that deductions (including the deduction for personal exemptions) shall be allowed only for purposes of income effectively connected with a trade or business within the United States. It is undisputed that the only United States source income of petitioner in 1970 was derived from the distributions of the trust. Under section 875 petitioner is treated as engaging in a trade or business if the trust itself is engaged in a trade or business. [4] *34 Therefore, the only issue for resolution is whether or not the trust was engaged in a trade or business in 1970. All of the assets of the trust consisted of stock in Quarry. The trustees did not sell or purchase any stock in 1970, but simply collected dividends on the Quarry stock and made distributions to the beneficiaries. The activities of the trustees as trustees were confined to managing the investment in Quarry stock. These activities do not constitute a trade or business. It is a well-settled principle of law that no matter how large the estate or how continuous or extended the work, the mere maintenance of records and collection of dividends through managerial attention to securities does not constitute a trade or business. ; . Petitioner points out that in , the Supreme Court held that "[Business] is a very comprehensive term and embraces everything about which a person can be employed." However, Flint defined business for purposes of the Corporation Tax Law of 1909 imposing an excise tax on business done in corporate *35 form. In Higgins the Supreme Court, confronted with the same argument petitioner is here making, held that Flint was not controlling in determining the meaning of trade or business under the Internal Revenue Code. . Petitioner also argues in her reply brief that "the holding in Higgins only applies to deduction cases and not to determining whether a nonresident alien taxpayer is engaged in a trade or business within the United States." Petitioner contends that , aff'd. (C.A. 4, 1948), certiorari denied , decided after Higgins, provides a different rule for determining whether the activities of a nonresident alien constitute a "trade or business" in the United States. We disagree with petitioner. The words "trade or business" are terminology familiar to the tax law that should be interpreted consistently with the general body of law on this subject. (C.A. 2, 1956); . In interpreting the term trade or business as it is used in the provisions relating to nonresident aliens, the Courts have consistently held *36 that the definition of the Supreme Court in Higgins is applicable. ; (C.A. 9, 1959). The Adda case involved extensive short-term trading in both securities and commodities through a resident agent and therefore involves a completely different set of facts than the instant case. And in any event, Congress added section 864(b) (2) (A) (ii) to the Code in 1966 for the express purpose of obviating the decision in Adda. [5] *37 H. Rept. No. 1450, to accompany H.R. 13103 (Pub. L. No. 89-809), 89th Cong., 2d Sess., p. 55 (1966). In explaining this amendment the House Report states: "[The] volume of stock or security transactions effected during the taxable year is not material in determing * * * whether the individual or corporation is engaged in trade or business within the United States." . Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954 unless otherwise indicated. ↩
2. Section 871 reads, in pertinent part: SEC. 871. TAX ON NONRESIDENT ALIEN INDIVIDUALS. (a) INCOME NOT CONNECTED WITH UNITED STATES BUSINESS - 30 PERCENT TAX. - (1) Income Other Than Capital Gains. - There is hereby imposed for each taxable year a tax of 30 percent of the amount received from sources within the United States by a nonresident alien individual as - (A) interest * * * dividends, * * * and other fixed or determinable annual or periodical gains, profits, and income. * * * (b) INCOME CONNECTED WITH UNITED STATES BUSINESS - GRADUATED RATE OF TAX. - (1) Imposition of Tax. - A nonresident alien individual engaged in trade or business within the United States during the taxable year shall be taxable as provided in section 1 or 1202(b) on his taxable income which is effectively connected with the conduct of a trade or business within the United States. (2) Determination of Taxable Income. - In determining taxable income for purposes of paragraph (1), gross income includes only gross income which is effectively connected with the conduct of a trade or business within the United States. ↩
3. Section 873 reads, in pertinent part: SEC. 873. DEDUCTIONS. (a) GENERAL RULE. - In the case of a nonresident alien individual, the deductions shall be allowed only for purposes of section 871(b) and (except as provided by subsection (b)) only if and to the extent that they are connected with income which is effectively connected with the conduct of a trade or business within the United States; and the proper apportionment and allocation of the deductions for this purpose shall be determined as provided in regulations prescribed by the Secretary or his delegate. (b) EXCEPTIONS. - The following deductions shall be allowed whether or not they are connected with income which is effectively connected with the conduct of a trade or business within the United States: * * * (3) Personal Exemption. - The deduction for personal exemptions allowed by section 151, except that only one exemption shall be allowed under section 151 unless the taxpayer is a resident of a contiguous country or is a national of the United States. ↩
4. Section 875 reads, in pertinent part: SEC. 875. PARTNERSHIPS; BENEFICIARIES OF ESTATES AND TRUSTS. For purposes of this subtitle - * * * (2) a nonresident alien individual or foreign corporation which is a beneficiary of an estate or trust which is engaged in any trade or business within the United States shall be treated as being engaged in such trade or business within the United States. 5. Section 864 reads, in pertinent part: SEC. 864. DEFINITIONS. (b) TRADE OR BUSINESS WITHIN THE UNITED STATES. - For purposes of this part, part II, and chapter 3, the term "trade or business within the United States" includes the performance of personal services within the United States at any time within the taxable year, but does not include - * * * (2) TRADING IN SECURITIES OR COMMODITIES. - (A) STOCKS AND SECURITIES. - (i) In General. - Trading in stocks or securities through a resident broker, commission agent, custodian, or other independent agent. (ii) Trading for Taxpayer's Own Account. - Trading in stocks or securities for the taxpayer's own account, whether by the taxpayer or his employees or through a resident broker, commission agent, custodian, or other agent, and whether or not any such employee or agent has discretionary authority to make decisions in effecting the transactions. This clause shall not apply in the case of a dealer in stocks or securities, or in the case of a corporation (other than a corporation which is, or but for section 542(c) (7) or 543(b) (1) (C) would be, a personal holding company) the principal business of which is trading in stocks or securities for its own account, if its principal office is in the United States. ↩